IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| IN RE: | * | Case No.: 21-11670-NVA |
| | | |
| ROB'S TOWER MOTORS SALES & SERVICE OF TANEYTOWN, LLC | * | Chapter 11 |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MOTION FOR INTERIM USE OF CASH COLLATERAL AND
PROVIDING FOR ADEQUATE PROTECTION THEREFOR**

Rob's Tower Motors Sales & Service of Taneytown, LLC ("Debtor" and "Debtor-in Possession"), by its counsel, respectfully moves, pursuant to Sections 361, 363, and 552 of the United States Bankruptcy Code (the "Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Rules"), for the entry of an Order permitting the Debtor the interim use of cash collateral and providing creditors claiming an interest in that cash collateral with adequate protection for such use. In support of this Motion, the Debtor states as follows:

1. The Debtor filed its voluntary petition under Subchapter V, initiating this case on March 17, 2021 (the "Petition Date").

**Jurisdiction and Venue**

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sec. 1334, and this is a core proceeding under 28 U.S.C. Sec. 157(b)(2)(M).

3. Venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for relief are Sections 361, 363, and 552 of the Code and Rule 4001 of the Rules.

5. This is a matter requiring the Court's prompt attention under Rule 4001 because the Debtor has a need for the use of the cash collateral generated in its business and because a prohibition of the use of such cash collateral will cause immediate and irreparable harm to the Debtor and its business.

**Background**

6. The Debtor is a limited liability company, organized on March 15, 2013. The Debtor is owned by its members, Robert J. Freels, Jr. (50%) and Catherine G. Freels (50%). Primarily due to a significant judgment being entered against them as guarantors under the Debtor's loan with Dallas Growth Capital and Funding LLC, d/b/a Sprout Funding ("Sprout Funding"), Mr. and Mrs. Freels filed a Chapter 13 Bankruptcy case on March 16, 2021 (case number: 21-11633-NVA).

7. The Debtor sells used motor vehicles and provides repair services related to the sale of the vehicles. The Debtor's assets consist primarily of cash, inventory, and machinery & equipment. The Debtor finances its inventory by floor-plan financing provided by three financing companies.

8. The Debtor operates from a leased facility at 529 E. Baltimore Street, Taneytown, Maryland 21787. The property is leased from an unrelated third-party landlord.

9. The Debtor's 2020 financial statements are presently being prepared. In calendar year 2019, the Debtor had annual gross revenue of $781,895.00 and an ordinary business loss of ($16,264). Gross revenue and profitability was negatively impacted throughout 2020 by the

COVID-19 pandemic, causing the Debtor to seek outside financing sources which it is now unable to repay in full (excepting floor-planned used vehicles).

10. The Debtor will open a Debtor-in-Possession Account and has not used "Cash Collateral" without an authorizing Order from the Court.

### Relief Requested

11. All cash, including cash on hand, proceeds from the operation of the Debtor's business, any checks, refunds, negotiable instruments, documents of title, deposit accounts, securities, and other cash equivalents which are now or may hereafter come into the possession, custody or control of the Debtor are referred to herein as "Cash Collateral". The Debtor seeks the interim use of Cash Collateral to meet its ordinary and necessary overhead expenses, including but not limited to taxes, insurance, utilities, payroll, routine payments to vendors and suppliers, and payments (upon the sale of a used vehicle) to the floor-plan creditors. The Debtor desires to maintain and preserve the value of its assets for the benefit of its estate and creditors.

12. Pursuant to Section 363(c)(2)(B), the Debtor proposes to provide the creditors claiming an interest in such Cash Collateral with adequate protection for such use by granting them replacement liens on the Debtor's postpetition cash and contract rights.

### Creditors Claiming an Interest in Cash Collateral

13. On or about July 7, 2019, Vehicle Acceptance Corporation ("VAC") filed a UCC-1 Financing Statement with the Maryland State Department of Assessments and Taxation ("SDAT") encumbering the Debtor's assets, including Cash Collateral. VAC is presently owed approximately $40,000.00. Attached hereto as "Exhibit A" is a copy of VAC's recorded Financing Statement.

14. On or about July 14, 2020, Westlake Flooring Company, LLC ("Westlake") filed a UCC-1 Financing Statement with SDAT encumbering the Debtor's assets, including Cash Collateral.  Westlake is presently owed approximately $50,000.00.  Attached hereto as "Exhibit B" is a copy of Westlake's recorded Financing Statement.

15. On or about June 16, 2020, U.S. Small Business Administration ("SBA") filed a UCC-1 Financing Statement with SDAT encumbering the Debtor's assets, including Cash Collateral.  SDAT lent the Debtor $150,000.00 under the pandemic EIDL Loan Program.  Attached hereto as "Exhibit C" is a copy of SBA's recorded Financing Statement.

16. On or about August 31, 2020, Auction Credit Enterprises LLC ("ACE") filed a UCC-1 Financing Statement with SDAT encumbering the Debtor's assets, including Cash Collateral.  ACE is presently owed approximately $60,000.00.  Attached hereto as "Exhibit D" is a copy of ACE's recorded Financing Statement.

17. A search of the Financing Statement records at SDAT do not show any filings for other active creditors of the Debtor.

18. By priority of filing dates at SDAT, VAC is in first lien position as to the Debtor's assets, including Cash Collateral; Westlake is in second lien position; SBA is in third lien position; and ACE is in fourth lien position.

19. There are two creditors with judgments against the Debtor, Bizfund.com and Sprout Funding.

### Debtor's Need to Use Cash Collateral

20. The Debtor requires the use of the Cash Collateral to, *inter alia*, pay contract obligations, vendors, floor plan lenders, and operating expenses, including employees wages and

taxes, and to generally preserve and protect its assets so as not to impair the value of its assets.

21. Without the use of Cash Collateral, the value of the Debtor's assets, will immediately and substantially diminish, and the Debtor will have no reasonable prospect of continuing to operate as a going concern, preserving the value of its assets or presenting a plan in this case. The ability of the Debtor to finance its operations and the availability of sufficient working capital and liquidity is vital to the Debtor's ability to preserve its assets and maintain its operations. The Debtor requires access to cash in order to maintain, preserve and continue its business operations. If the Debtor is unable to use Cash Collateral for such purposes, the recoveries for all creditors, including secured creditors, will be greatly reduced since, under a "shutdown" scenario, the value of the Debtor's estate would decline dramatically. Entry of an Order authorizing use of Cash Collateral is (a) critical to the Debtor's ability to maximize value for its creditors; (b) in the best interest of the Debtor and the estate; and (c) necessary to avoid immediate and irreparable harm to the Debtor, its creditors, assets, business, goodwill, and reputation.

22. The Debtor asserts that the value of its assets, which as of the 2019 tax return prepared by Debtor's accountant, Bounds Accounting and Tax Service, LLC, is $234,079.00 (of which $225,522.00 is inventory), does not exceed the combined value of the debt held by known secured creditors, *i.e.*, $40,000.00 VAC; $50,000.00 Westlake; $150,000.00 SBA; and $60,000.00 ACE = $300,000.00). Absent recorded financing statements from other creditors, the Debtor is treating such other creditors as unsecured.

23. Payments to VAC, Westlake, and ACE will continue post-petition. SBA has no present repayment requirement.

24. The Debtor is preparing a 6-month operating budget of expected income and expenses. The budget will provide for expenditures to fund the Debtor's necessary and essential day-to-day operations, which will primarily be the continued costs of operation of selling used vehicles. The Debtor will anticipate budget losses during the first and second post-petition months; however, the Debtor reasonably believes that due to a nationwide shortage of new vehicle inventory, the sale price for used vehicles may increase by a much as 40% through late spring and into the fall. The anticipated increase in per unit sales as well as pent-up consumer demand post COVID-19 bodes well for the Debtor's longer term viability and ability to successfully reorganize.

25. The Debtor seeks the interim use of Cash Collateral, including cash on hand as well as proceeds from the operations of the Debtor's business.

26. The Debtor intends to negotiate with VAC, Westlake, SBA, and ACE for agreed-upon Cash Collateral Order(s). Until the sooner of when such agreements are reached or until the operating period through May 17, 2021 is concluded, the Debtor seeks the interim use of Cash Collateral to pay its operating expenses.

### Basis for Relief

27. Section 363(c)(2)(B) of the Code permits a debtor-in-possession to use cash collateral after notice and a hearing.

28. Section 361(2) sets forth the conditions under which a debtor may provide adequate protection to its creditors through an additional or replacement lien.

29. Pursuant to Code Section 363(c), the Debtor requests temporary authority to use Cash Collateral in the ordinary course of business and to pay reasonable and necessary

professional fees and expenses approved by the Court. As adequate protection for the use of Cash Collateral, the Debtor proposes to grant the secured creditors additional and replacement liens in substantially all of the Debtor's postpetition assets in the same manner and priority as their prepetition liens.

30. The Debtor has given notice of this Motion, including the nature of the relief sought herein, and has served a copy of this Motion by first class mail, fax, or e-mail to the Debtor's secured creditors, to all other creditors and parties-in-interest, and to the United States Trustee. The Debtor requests that the notices set forth in this paragraph be deemed adequate and complete under the circumstances and that any further notice of the Motion or the relief requested herein be dispensed with and waived.

31. The Debtor submits, pursuant to Local Bankruptcy Rule 9013-2, that no memorandum of law will be filed, and the Debtor will rely solely upon the Motion.

WHEREFORE, the Debtor respectfully requests that this Court set a hearing on the Motion, grant the Motion and enter the attached Interim Order immediately pursuant to Rule 4001(b)(2), and/or grant such other and further relief as the Court deems just and proper.

/s/ Edward M. Miller
Edward M. Miller
Federal Bar No.: 024281
Miller & Miller, LLP
39 N. Court St.
Westminster, MD 21157
410-751-5444
E-mail: mmllplawyers @verizon.net
Attorneys for Debtor

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 17th day of March, 2021, a copy of the foregoing Motion was mailed by postage prepaid, first class, U.S. Mail, to all creditors and parties-in-interest as shown on the attached mailing matrix; and electronically through the Court's CM/ECF system to the Office of the U.S. Trustee.

/s/ Edward M. Miller
Edward M. Miller